<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ANTHONY PEOPLES, : | |
| : | Civil No. 05-5916 (JBS) |
| Petitioner, : | |
| : | |
| v. : | |
| : | **O P I N I O N** |
| RONALD CATHEL, et al., : | |
| : | |
| Respondents. : | |

**APPEARANCES:**

Anthony Peoples, <u>Pro</u> <u>Se</u>
New Jersey State Prison
#304892/137935B
P.O. Box 861
Trenton, NJ 08625

Nancy P. Scharff
Assistant Prosecutor
Camden County Prosecutor's Office
25 North Fifth Street
Camden, NJ 08102
Attorney for Respondents

**SIMANDLE, District Judge**

Petitioner, Anthony Peoples, filed the within petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254. Respondents filed a Response to the Petition on June 26, 2006. The Court has considered all submissions. For the reasons set forth below, the Petition will be denied.

**BACKGROUND**

1.   Factual Background

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference, see 28 U.S.C. § 2254(e)(1), will simply reproduce the Superior Court of New Jersey, Appellate Division's ("Appellate Division") factual recitation:

On August 27, 1995, at approximately five o'clock in the afternoon, Marcero Harper, Jermaine Lewis, Karl Beverly, and Derrick Warren (collectively referred to as the victims) arrived at Farnham Park in Camden, to exercise on the park's parallel bars. About ten minutes into their exercises, Lewis noticed two other individuals approach the exercise equipment. These two men were drinking beer and both proceeded to urinate on a tree near the exercise area. The two men, later identified as Alfred Gilbert, and defendant, Anthony Peoples, then approached the victims. Lewis testified that Gilbert made some derogatory comments about his workout on the parallel bars, as a result of which words were exchanged, almost escalating into a fight. Thereafter, Gilbert pulled a gun from his backpack and told each of the victims to grab onto the parallel bars. Gilbert then proceeded to wave the gun in their faces, while Peoples searched everybody's pockets. Warren testified that defendant rifled through his pockets, took his money and proceeded to empty the contents of his backpack onto the ground, eventually taking the backpack itself.

Following the search of their pockets, and the stealing of various items from the four, Warren testified that Gilbert and defendant discussed who they were going to shoot. Lewis also testified that Gilbert said, "you'll never forget my face." Gilbert then shot Harper once in the chest, at which point both men ran out of the park.

Rachel Rodriguez also was in the park that day, heard the shot, and saw two men running together out of the park, one wearing a striped shirt with a Kango hat

and carrying a black duffel bag.  Upon coming to the
scene of the shooting, she began to perform CPR on
Harper prior to the ambulance arriving.  Harper was
then transported to Cooper Medical Center where he died
from a single gunshot wound to the chest.

About a week and a half later Beverly and Warren
went to the Prosecutor's Office to attempt to describe
the non-shooter to a composite sketch artist.  After
struggling to describe the man's characteristics, the
two men were given numerous pictures to look through to
find characteristics similar to the man in question.
While looking through the photographs they came upon a
photo of Gilbert, who they identified as the shooter.
However, they were still unsuccessful in providing a
composite of the second man to the sketch artist.

A few days later, Warren returned to the
Prosecutor's Office to view a photo array, from which
he selected defendant's photo as the non-shooter.
Beverly also positively identified defendant from a
photo array.  Lewis, however, was only able to identify
Gilbert from a photo array.  At trial, Warren and
Beverly made in court identifications of defendant.

On September 13, 1995, Gilbert was arrested.  On
that same day, he gave a recorded statement to the
police admitting his participation in the shooting and
implicating defendant as his accomplice.  Gilbert
entered into a plea agreement in which he pled guilty
to aggravated manslaughter and received a sentence of
forty years with twenty years of parole ineligibility.
Gilbert also implicated defendant during his plea
allocution.

At trial, however, Gilbert recanted his earlier
statement to the police, testifying that defendant was
not involved with the robbery of the four individuals
or the death of Harper.  He did admit that defendant
was in the park on that day and jumped in the car with
him in order to flee the scene.  He further testified
that the investigator who took his statement suggested
that he would receive a lighter sentence in return for
implicating defendant.

Defendant testified on his own behalf at trial.
According to his version of the events, he was sitting
on a bench in the park upset that his mother was going

3

to have surgery.  He further testified that he had
never had a relationship with Gilbert and was not in
the vicinity of the shooting when it took place.  He
testified that after the shooting took place, he ran
home, denying that he fled in the car with Gilbert.

(State v. Peoples, A-3643-98T4 (Apr. 11, 2001), pp. 3-6;

Respondents' Appendix "Ra" 16).

2.   Procedural History

A Camden County Grand Jury indicted Petitioner on nine

counts, including: four counts of first-degree robbery, contrary

to N.J.S.A. 2C:15-1 (counts one, four, five and six); knowing or

purposeful murder, contrary to N.J.S.A. 2C:11-3a(1) or (2) (count

two); felony murder, contrary to N.J.S.A. 2C:11-3a(3) (count

three); second-degree possession of a weapon for an unlawful

purpose, contrary to N.J.S.A. 2C:39-4a (count seven); third-

degree unlawful possession of a weapon, contrary to N.J.S.A.

2C:39-5b (count eight); and two counts of second-degree

possession of a weapon by a previously convicted person, contrary

to N.J.S.A. 2C:39-7 (count ten).  Count nine did not pertain to

Petitioner.

From July 13 through July 22, 1998, Petitioner was tried by

jury in the Superior Court of New Jersey, Law Division, Camden

County ("Law Division").  The jury found Petitioner guilty on

counts one through eight.  Count ten was dismissed by the State

following the jury's guilty verdict.

4

On September 18, 1998, Petitioner was sentenced to an aggregate sentence of life imprisonment, plus 25 years, with a 45-year parole ineligibility period, pursuant to the "Graves Act," N.J.S.A. 2C:43-6, because of a prior armed robbery conviction.

Petitioner appealed his conviction and sentence to the Appellate Division.  On April 11, 2001, the conviction and sentence were affirmed.  Petitioner petitioned the New Jersey Supreme Court for certification, which was denied on July 16, 2001.

On or about October 12, 2001, Petitioner filed a petition for post-conviction relief ("PCR") in the trial court.  After a non-evidentiary hearing, the trial court denied the PCR motion on December 5, 2003.  On June 17, 2005, the Appellate Division affirmed the denial of the PCR petition.  On September 29, 2005, Petitioner's petition for certification to the New Jersey Supreme Court was denied.

The instant petition was filed on December 19, 2005.  On January 17, 2006, Petitioner was advised of his rights pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000).  On June 26, 2006, Respondents filed an Answer and the state court record.

## DISCUSSION

**A.    Petitioner's Claims.**

Petitioner asserts the following arguments for habeas relief:

1.    Petitioner's rights were violated when the trial court failed to give a jury instruction on the lesser included offense of aggravated manslaughter.

2.    Petitioner's rights were violated when te trial court failed to give a proper jury instruction on identification.

3.    Petitioner's rights were violated when the trial court failed to give a jury instruction on how to evaluate a recanting witness's prior statement.

4.    Petitioner's sentence was improperly enhanced based on factors found by the judge, rather than by a jury.

See Petition for Writ of Habeas Corpus, ¶ 12, and Attachment to Petition.

Petitioner has raised the instant claims before the New Jersey state courts.

**B.    Standards Governing Petitioner's Claims.**

Section 2254 of Title 28, United States Code, provides that the district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), federal

6

courts in habeas corpus cases must give considerable deference to determinations of the state trial and appellate courts.  See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied 534 U.S. 919 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)(citing Parke v. Raley, 506 U.S. 20, 36 (1992)).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus.  The statute reads as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court explained the application of § 2254(d)(1).  The Court analyzed subsection 1 as two clauses:  the "contrary to" clause and the "unreasonable application" clause.  The Court held that under the "contrary to" clause, "a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme]

7

Court has on a set of materially indistinguishable facts." <u>Id.</u>
A federal court may grant the writ under the "unreasonable
application" clause, if "the state court identifies the correct
governing legal principle from [the Supreme] Court's decisions
but unreasonably applies that principle to the facts of the
prisoner's case." <u>Id.</u> at 413.  Habeas relief may not be granted
under the "unreasonable application" clause unless a state
court's application of clearly established federal law was
objectively unreasonable; an incorrect application of federal law
alone is not sufficient to warrant habeas relief. <u>See</u> <u>id.</u> at
411; <u>see</u> <u>also</u> <u>Werts v. Vaughn</u>, 228 F.3d 178, 197 (3d Cir. 2000),
<u>cert.</u> <u>denied</u>, 532 U.S. 980 (2001); <u>Matteo v. Superintendent, SCI
Albion</u>, 171 F.3d 877, 891 (3d Cir.), <u>cert.</u> <u>denied</u>, <u>Matteo v.
Brennan</u>, 528 U.S. 824 (1999).  Thus, the federal court must
decide whether the state court's application of federal law, when
evaluated objectively and on the merits, resulted in an outcome
that cannot reasonably be justified under existing Supreme Court
precedent.  <u>See</u> <u>Werts</u>, 228 F.3d at 197; <u>see</u> <u>also</u> <u>Jacobs v. Horn</u>,
395 F.3d 92, 100 (3d Cir. 2005).

    With regard to 28 U.S.C. § 2254(d)(2), a federal court must
confine its examination to evidence in the record.  <u>See</u> <u>Abu-Jamal
v. Horn</u>, 2001 WL 1609690, at *12 (E.D. Pa. December 18, 2001).
In addition, the state court record should be reviewed to assess
the reasonableness of the state court's factual determinations.

See id.  Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court." Id.; see also 28 U.S.C. § 2254(e)(1).  The Court of Appeals for the Third Circuit has ruled that this presumption of correctness can be overcome only by clear and convincing evidence.  See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001)(citing 28 U.S.C. § 2254(e)(1)).  "A finding that is well-supported and subject to the presumption of correctness is not unreasonable." Abu-Jamal, 2001 WL 1609690 at *12 (citing Duncan, 156 F.3d at 198).

Furthermore, federal habeas courts ordinarily refrain from revisiting credibility determinations as "it would be wholly inappropriate for a federal court to repastinate soil already thoroughly plowed and delve into the veracity of the witnesses on habeas review." Sanna v. Dipaolo, 265 F.3d 1, 10 (1st Cir. 2001).  A habeas petitioner therefore "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See

9

Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

**C.   Petitioner's Claims Regarding Jury Instructions (Grounds One through Three).**

In Ground One, Petitioner argues that the trial judge should have provided to the jury an instruction on aggravated manslaughter.  In Ground Two, Petitioner argues that the trial judge's instruction on identification was improper and favored the State.  In Ground Three, Petitioner argues that the trial judge should have provided to the jury an instruction on how to evaluate a recanting witness' prior statement.

1.   Habeas Review of Jury Charge Claims.

Under federal law applicable in this habeas review, generally, matters of state law and rules of procedure are not reviewable in a federal habeas petition.  The Supreme Court has stated that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Federal courts must afford the states deference in its determinations regarding evidence and procedure.  See Crane v. Kentucky, 476 U.S. 683, 690 (1986).  It is well-established that "a state court's misapplication of its own law does not generally raise a constitutional claim.  The federal courts have no supervisory

10

authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997)(citations omitted), cert. denied, 522 U.S. 1109 (1998).

Similarly, questions relating to jury charges are normally matters of state law and are not cognizable in federal habeas review. See Engle v. Isaac, 456 U.S. 107 (1982); Henderson v. Kibbe, 431 U.S. 145 (1977); Zettlemoyer v. Fulcomer, 923 F.2d 284, 309 (3d Cir.), cert. denied, 502 U.S. 902 (1991); Grecco v. O'Lone, 661 F. Supp. 408, 412 (D.N.J. 1987)(Thompson, J.).  Only where the jury instruction is "so prejudicial as to amount to a violation of due process and fundamental fairness will a habeas corpus claim lie." Id.

"[T]he fact that [an] instruction was allegedly incorrect under state law is not a basis for habeas relief." Estelle v. McGuire, 502 U.S. at 71-72.  Rather, the district court must consider "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,' ... not merely whether 'the instruction is undesirable, erroneous, or even universally condemned.'" Henderson, 431 U.S. at 154 (quoting Cupp v. Naughten, 414 U.S. 141, 146-47 (1973)). Moreover, "[t]he burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state's court judgment

is even greater than the showing required to establish plain error on direct appeal."  Id.

    2.   Failure to Provide Aggravated Manslaughter Charge
         (Ground One).

    With regard to Petitioner's claim that the trial judge failed to give an instruction on the lesser-included homicide offense of aggravated manslaughter, the Appellate Division found that the trial judge erred under New Jersey law in omitting the charge.  (Ra 16 at p. 10).  However, the Appellate Division did not reverse the murder conviction because "[a] review of the record reveals that defense counsel's failure to request a lesser-included manslaughter instruction was based upon an evident strategic decision."  (Ra 16 at p. 10).  The Appellate Division continued to explain why it determined that the failure to give the instruction was a strategic decision by defense counsel.  (Ra 16 at pp. 10-12).  The Appellate Division concluded: "To the extent that there might have been error in not requesting such a lesser included instruction, it has uniformly been held that trial errors 'which were induced, encouraged, or acquiesced in or consented to by defense counsel ordinarily are not a basis for reversal on appeal.'" (Ra 16 at p. 12)(citations omitted).

    In Beck v. Alabama, 447 U.S. 625, 635 (1980), the Supreme Court held that in a capital case, a trial court must give a requested charge on a lesser included offense where it is

12

supported by the evidence.  See also Gilmore v. Taylor, 508 U.S. 333, 360 (1993).  The Court left open the question of whether instructions on lesser included offenses were required in non-capital cases.  See id.  The Court of Appeals for the Third Circuit has held that trial courts must charge a lesser included offense so that the jury does not convict a defendant of a crime more serious than the jury believes the defendant actually committed merely because the jury believes the defendant had some degree of involvement and does not want to set the defendant free.  See Vujosevic v. Rafferty, 844 F.2d 1023, 1027 (3d Cir. 1988)(citing Keeble v. United States, 412 U.S. 205, 212-13 (1973)).

After the Court of Appeals decided Vujosevic, the United States Supreme Court rendered its decision in Schad v. Arizona, 501 U.S. 624 (1991).  In Schad, Petitioner was tried for capital offenses, and in accordance with Beck, the jury was given the option of finding Petitioner guilty of the noncapital offense of second-degree murder.  See id. at 645-46.  However, Petitioner argued that the trial court should have charged the jury on every lesser included noncapital offense supported by the evidence, in his case, robbery.  See id. at 646.  The Supreme Court disagreed, stating that "the central concern of Beck simply is not implicated in the present case, for petitioner's jury was not faced with an all-or-nothing choice between the offense of

13

conviction (capital murder) and innocence." Id. at 647.  In Schad's case, the jury was given a choice of capital murder and second-degree murder, and the Supreme Court was "satisfied that the second-degree murder instruction . . . sufficed to ensure the verdict's reliability."  Id. at 647-48.

Thus, in Geschwendt v. Ryan, 967 F.2d 877, 884 n.13 (3d Cir.), cert. denied, 506 U.S. 977 (1992), the Court of Appeals for the Third Circuit observed that the Supreme Court, in Schad, cast doubt on the theory that due process requires the court to instruct on a lesser included offense in non-capital offenses. The Court of Appeals stated that, in accordance with Schad, "in cases involving offenses on a ladder, if the trial court wrongfully refuses to charge the offense at the bottom rung, that error is harmless provided the jury returns a guilty verdict for an offense higher up rather than for an intermediate offense which was also charged."  Geschwendt, 967 F.2d at 884.  The Court of Appeals also stated, "[w]hile we have attempted to accommodate Vujosevic to our holding, obviously if our ladder analysis cannot be reconciled with Vujosevic, then it is that case which must fall since our ladder is anchored on Schad."  Id. at 885 n.13.

Other circuits have held that the failure to give lesser included offense instructions in a non-capital case does not present a constitutional question.  See Pitts v. Lockhart, 911

14

F.2d 109, 112 (8th Cir. 1990), cert. denied, 501 U.S. 1253 (1991); Bonner v. Henderson, 517 F.2d 135, 136 (5th Cir. 1975).

Based on these cases, it is clear that Petitioner has not demonstrated that the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  The state court actions in Petitioner's case were not contrary to Schad or its progeny.

Moreover, even if it was error not to charge the jury on the lesser included offense of manslaughter, the lack of such a charge did not affect the outcome of the trial.  There was sufficient evidence at trial to support the murder conviction, and it was very clear that the jury believed the various witness' testimony concerning the incident.  Thus, at most, Petitioner's claim of fault is based on omission, which the Supreme Court has stated is less serious than a misstatement of the law.  See Henderson, 431 U.S. at 155 ("An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law").  Petitioner fails to point to a federal requirement that a specific instruction was required in this instance; nor can he demonstrate that the lack of the proposed charge deprived

15

him of a defense which federal law provided to him.  See Johnson
v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997)(stating that a
habeas petitioner who challenges state jury instructions must
"point to a federal requirement that jury instructions on the
elements of an offense . . . must include particular provisions,"
or "demonstrate that the jury instructions deprived him of a
defense which federal law provided to him").

Therefore, this Court concludes that the absence of a jury
instruction on the lesser included offense of manslaughter, when
viewed in the context and evidence of this case, did not so
infect the trial with unfairness as to violate Petitioner's due
process rights.  Petitioner has not demonstrated that the actions
of the state courts "resulted in a decision that was contrary to,
or involved an unreasonable application of, clearly established
Federal law, as determined by the Supreme Court of the United
States," or "resulted in a decision that was based on an
unreasonable determination of the facts in light of the evidence
presented in the State court proceeding."  Accordingly, this
claim will be denied.

3.   Improper Identification Charge Claim (Ground Two).

Petitioner argues that the jury instruction on
identification favored the State, and that it was not tailored to
the facts of the case.  Specifically, Petitioner argues that the

instruction revealed pro-State identification evidence, rather than focusing on the inconsistencies in identification.

With regard to the jury instruction on identification, the trial judge charged:

> Next, ladies and gentlemen, I'm going to give you an instruction on identification of the defendant, Anthony Peoples.  The defendant as part of his general denial of guilt says that the state has not presented sufficient reliable evidence to establish beyond a reasonable doubt that he is the person who committed the alleged offenses.  Where the identity of the person who committed the crime is in issue, the burden of proving that identity is upon the state.  The state must prove beyond a reasonable doubt that this defendant is the person who committed the crime – or crimes that have been the subject of this trial.

> The defendant has neither the burden nor the duty to show that the crime if committed was committed by someone else, nor does he have the obligation to prove the identity of that other person.  You must determine therefore not only whether the state has proved each and every element of the offenses charged against him beyond a reasonable doubt, but also you must determine whether the state has proved beyond a reasonable doubt that this defendant is the person who committed it.  In other words, that it was this defendant who was present on that day and went through the pockets of the four people.

> In order to meet its burden with respect to the identification of the culprit, the state has presented the testimony of two witnesses, Karl Beverly and Derrick Warren.  You will recall that these witnesses identified the defendant in Court as the person who committed the offenses.  In other words, they testified as you'll recall that it was this defendant that went through their pockets as the gun was held by Alfred Gilbert.

> According to these two witnesses, . . . each one said that his identification of the defendant in Court was based upon the observations and perceptions which

he made of the defendant on the scene at the time- at the time the offense was being committed.

It is your function as jurors to determine what weight, if any, to give to this identification testimony.  You must decide whether it is sufficiently reliable evidence on which to conclude that this defendant is the person who committed the offense or offenses charged.

In going about your task you should consider the testimony of the witness in the light of the customary criteria concerning witness credibility as I just explained those criteria to you a few minutes ago.  It is particularly appropriate that you consider the capacity or the ability of the witness to make observations or perceptions as you gauge it to be and also you should consider the opportunity which that witness had at the time and under all of the circumstances for seeing that which he says he saw or that which he says he perceived with regard to his identification of the person who committed the alleged offense or offenses.

Unless the in court identification results from the observations or the perceptions of the defendant by Mr. Beverly and Mr. Warren during the commission of the crime rather than being the product of an impression gained at an out of court identification procedure, it should be afforded no weight.  Thus the ultimate issue of the trustworthiness of an in court identification is for you to decide.

If after a consideration of all of the evidence you have a reasonable doubt as to the identity of the defendant as the person present at the time and place of the crime, then you must find him not guilty.  If however after a consideration of the - all of the evidence, if you are convinced beyond a reasonable doubt of the defendant's presence at the scene at those exercise bars, then you will consider whether the state has proved each and every element of the offense charged beyond a reasonable doubt.

(Ra 6 at pp. 77-79).

The Appellate Division examined Petitioner's jury charge claims on direct appeal and determined that the identification charge was proper under New Jersey law.  (Ra 16 at pp. 6-7).

The Court finds that the charge, which was proper under state law, did not so "infect" the entire trial in that the conviction violated due process.  As the Appellate Division pointed out:

> In this case there were indeed inconsistencies between witnesses in their description of the perpetrators and certain witnesses were unable to identify either of the two men.  Clearly, identification was a central issue.  Defense counsel spent a considerable amount of time in summation commenting on the identification issues and the court gave an identification instruction [in accordance with state case law].  In addition, . . . the jury here was instructed several times on their responsibility to weigh the credibility of the witnesses generally and were instructed unequivocally to find defendant not guilty if they had a reasonable doubt that he did not commit the offenses charged.

(Ra 16 at p. 7).  The identification issues were clearly presented to the jury, who decided to believe the State's evidence and theories over the defense.  While the result is not the one preferred by Petitioner, Petitioner has demonstrated no constitutional violation with regard to the jury charges.

4.  <u>Failure to Charge Regarding Recanting Witness (Ground Three).</u>

Finally, Petitioner argues that the trial court failed to instruct the jury on the evaluation of a recanting witness' prior statement.  In particular, the shooter in the incident implicated

Petitioner in the crime in a statement made to police.  However, later during trial, the shooter recanted, stating that he acted alone.  The State then played a tape of the shooter's statement to police for the jury, which implicated Petitioner.  Petitioner argues that the trial judge should have instructed the jury on how they should evaluate the credibility of the shooter's prior statement.

The Appellate Division found that under state law, the trial judge's failure to provide the instruction "does not raise a reasonable doubt in our minds that the jury was led 'to a result it otherwise might not have reached,' nor, stated differently, did it 'possess a clear capacity to bring about an unjust result.'"  (Ra 16 at p. 17)(citations omitted).

This Court reaches the same conclusion with respect to the claim that the jury should have been instructed on the issue of recanting witness' prior statements.  The trial judge did give the jury general instructions on the issue of credibility.  Further, this charge merely informs as to certain types of evidence and is typically provided as a guide for the jury to evaluate the evidence at trial.  It does not go to the elements of the offenses or to the burden of proof, which are required instructions.  In addition, the Court finds that the lack of such an instruction to the jury did not affect the outcome of the

trial.  There was sufficient evidence at trial to support the convictions.

As such, Petitioner has not demonstrated that the actions of the state courts regarding his jury instructions "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Accordingly, these grounds for a writ of habeas corpus will be denied.

**D.   Petitioner's Claims Regarding Sentencing (Ground Four).**

Petitioner argues that the imposition of "an enhanced sentence," based on aggravating factors found by the sentencing judge rather than a jury, violated the holding of Blakely v. Washington, 542 U.S. 296 (2004).

The Appellate Division, on direct appeal, found that "the court did not abuse its discretion in imposing the sentence which was fully justified by the facts of the case."  (Ra 16 at p. 21).

In Apprendi v. New Jersey, 530 U.S. 466, 471, 490 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  In Blakely v.

Washington, 542 U.S. 296 (2004), the Supreme Court overturned a
sentence imposed under Washington state's sentencing system,
explaining that "the relevant statutory maximum is not the
maximum sentence a judge may impose after finding additional
facts, but the maximum he may impose without any additional
findings."  542 U.S. 296, –, 124 S. Ct. 2531, 2537 (2004)
(internal quotations omitted).  Most recently, in United States
v. Booker, 543 U.S. 220 (2005), the Supreme Court applied the
rule of Apprendi to the U.S. Sentencing Guidelines, holding that
the Guidelines are not mandatory, but are merely advisory.

     In this case, the Superior Court pronounced sentence on
September 18, 1998, almost two years before Apprendi.  The rules
announced in these cases are not applicable retroactively to
cases on collateral review.  See generally In re Olopade, 403
F.3d 159 (3d Cir. 2005) (finding that the decision of the Supreme
Court in Booker does not apply retroactively to cases on
collateral review); United States v. Swinton, 333 F.3d 481 (3d
Cir.), cert. denied, 540 U.S. 977 (2003) (holding that Apprendi
does not apply retroactively to cases on collateral review); In
re Turner, 267 F.3d 225 (3d Cir. 2001) (holding that Apprendi
does not apply retroactively to cases on collateral review).  See
also United States v. Price, 400 F.3d 844, 849 (10th Cir.), cert.
denied, 126 S. Ct. 731 (2005) (Blakely does not apply
retroactively to cases on collateral review).

In any event, it does not appear that the trial court violated the rule of Apprendi/Blakely.  The Supreme Court has held that judicial fact-finding in support of a sentencing judge's discretion to sentence within a statutory range does not violate the constitution.  See Booker, 543 U.S. at 233; Blakely, 542 U.S. at 308-09.  In this case, the trial court did not sentence Petitioner beyond the statutory maximum in violation of Apprendi and Blakely.

Further, a federal court's ability to review state sentences is limited to challenges based upon "proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies." See Grecco v. O' Lone, 661 F. Supp. 408, 415 (D.N.J. 1987) (citation omitted).  Thus, a challenge to a state court's discretion at sentencing is not reviewable in a federal habeas proceeding unless it violates a separate federal constitutional limitation.  See Pringle v. Court of Common Pleas, 744 F.2d 297, 300 (3d Cir. 1984); see also 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67 (1991); Lewis v. Jeffers, 497 U.S. 764, 780 (1990).

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" Ewing v. California, 538 U.S. 11, 20 (2003) (citations omitted).  The Supreme Court has identified three factors that may be relevant to a determination

23

of whether a sentence is so disproportionate to the crime committed that it violates the Eighth Amendment:  "(1) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." Solem v. Helm, 463 U.S. 277, 292 (1983).  More recently, Justice Kennedy has explained that Solem does not mandate comparative analysis within and between jurisdictions.  See Harmelin v. Michigan, 501 U.S. 957, 1004-05 (Kennedy, J., concurring in part and concurring in judgment). Justice Kennedy identified four principles of proportionality review--"the primacy of the legislature, the variety of legitimate penological schemes, the nature of our federal system, and the requirement that proportionality review be guided by objective factors"--that "inform the final one:  The Eighth Amendment does not require strict proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime," Id. at 1001 (citation omitted), quoted with approval in Ewing, 538 U.S. at 23.

Here, Petitioner was convicted of felony murder, murder, and four robbery counts, with a mandatory extended term pursuant to New Jersey's "Graves Act," N.J.S.A. 2C:43-6.  Petitioner received a life sentence with a 35-year parole ineligibility term, and twenty years with a ten-year parole ineligibility term on the

robbery convictions, to be served consecutively to the murder sentence.  Any sentencing error that may have occurred is a matter of state law and does not rise to a level of disproportionality that violates the Eighth Amendment.  As the sentencing issue raised by Petitioner is a matter of state law, and because the Court finds no constitutional violation, this claim must be denied.

**CONCLUSION**

For the foregoing reasons, the Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254 is denied.  The Court further finds that no certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253.

An appropriate Order accompanies this Opinion.


 **s/ Jerome B. Simandle**
JEROME B. SIMANDLE
United States District Judge

Dated:  **November 21, 2006**